JENNER & BLOCK LLP
Vincent E. Lazar
Landon S. Raiford (*pro hac vice* pending)
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Marc B. Hankin
Carl N. Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

*Proposed Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>SVB FINANCIAL GROUP,[1]<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 23-10367 (MG) |
| SVB FINANCIAL GROUP,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>UBS SECURITIES LLC,<br><br>　　　　　Defendant. | Adv. Proc. No. 23-1091 (MG) |

**CORRECTED COMPLAINT FOR INJUNCTIVE RELIEF**

SVB Financial Group, debtor and debtor-in-possession ("SVB Financial" or "Debtor" or

"Plaintiff"), alleges for its complaint ("Complaint") as follows:

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

**Nature of the Action and the Need for Relief**

1.  The Debtor brings this adversary proceeding under Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a) and 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") to enjoin the continuation of the following two arbitrations for a period 120 days (without prejudice to a request for further extension): *UBS Securities LLC v. SVB Leerink LLC, et al.*, FINRA Dispute Resolution No. 21-02142 (the "New York Arbitration"), and *UBS Securities LLC v. Jason Auerbach, et al.*, FINRA Dispute Resolution No. 22-00363 (the "California Arbitration," and together with the New York Arbitration, the "Arbitrations").

2.  The Debtor requests a 120-day stay of the Arbitrations so key personnel of one of the Debtor's principal remaining operating subsidiaries—SVB Securities LLC ("SVB Securities")—can focus on triaging the ongoing company-wide crisis following the receivership of Silicon Valley Bank and pursuing a value-maximizing strategic transaction without the distraction of two trials currently scheduled across twenty trial days beginning next month.

3.  The Debtor is a holding company whose business is conducted through its subsidiaries and affiliates. SVB Securities, the wholly-owned indirect subsidiary that comprises the Debtor's investment banking business line, is an essential component of the Debtor's business and restructuring effort. Without the requested injunction, SVB Securities' key management personnel—who are vital to the Debtor's strategic-alternative process and maximizing the value of the Debtor's estate—will be unreasonably forced to divide their time and attention over the next few months between the strategic-alternative process and the two arbitration trials. There simply are not enough hours in the day for SVB Securities' senior management team to effectively manage the current crisis, the strategic-alternative process, and the Arbitrations all at once.

4. As a result, continuing the Arbitrations as scheduled poses a material risk of destroying the value of SVB Securities, which, given its importance to the Debtor's restructuring efforts, would irreparably harm the Debtor at this critical juncture in its chapter 11 case.

5. The certain harm facing the Debtor, its estate, and its restructuring process in the absence of a 120-day stay outweighs the minimal prejudice that UBS would suffer if this Court were to grant the requested relief. The Debtor is not seeking to permanently bypass the arbitration forum or force UBS to litigate its claims in this Court. Instead, granting the requested relief would result in UBS waiting a few months to prosecute its claims for money damages in the Arbitrations.

6. The equities weigh in favor of staying the Arbitrations, and the Debtor respectfully requests that the Court stay the Arbitrations for 120 days to allow the Debtor and SVB Securities to pursue a strategic transaction that will benefit all parties in interest.

## Jurisdiction

7. 5. This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. § 1334(b) because this adversary proceeding arises under title 11 and arises in and is related to the above-captioned chapter 11 case, which is pending in this Court.

8. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

9. This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

10. The Debtor consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11. The predicates for the relief requested in this adversary proceeding are sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rules 7001(7) and 7065.

**Parties**

12.     Plaintiff SVB Financial is a financial services company with a principal place of business at 387 Park Avenue South New York, New York, 10016. Prior to March 10, 2023, SVB Financial owned and operated Silicon Valley Bank, a state-chartered bank. SVB Financial's primary business lines include SVB Capital, its venture capital and credit investment arm, and SVB Securities.

13.     Defendant UBS Securities LLC ("UBS") is a Delaware limited liability company, and a broker-dealer licensed and qualified to do business in the States of New York, North Carolina, and California.

**Background**

**A.  The Bankruptcy Case**

14.     On March 27, 2023 (the "Petition Date"), SVB Financial filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [Dkt. 1.]

15.     The Debtor remains in possession of its property and continues to operate and maintain its business as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner in this case.

16.     On March 28, 2023, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "UCC") under section 1102 of the Bankruptcy Code [Dkt. 72].

17.     The Debtor indirectly operates several different business lines in the financial services industry through its various wholly-owned subsidiaries, focusing primarily on the innovation economy.

18.     Prior to March 10, 2023, the Debtor owned and operated Silicon Valley Bank, a state-chartered bank. On March 10, 2023, the California banking authorities closed Silicon Valley Bank and appointed the Federal Deposit Insurance Corporation as receiver ("FDIC-R").

4

19. Additional factual background relating to the Debtor's businesses, the receivership of Silicon Valley Bank, and the commencement of this Chapter 11 Case is set forth in the *Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [Dkt. 21] and *Supplemental Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [Dkt. 43] (the "First Day Declarations").

**B. SVB Securities**

20. SVB Securities is a wholly-owned indirect subsidiary of the Debtor. SVB Securities is an SEC-registered broker-dealer providing investment banking services across the healthcare and technology sectors. SVB Securities focuses on the following product and service offerings: capital raising, M&A advisory, structured finance, equity research, and sales and trading.

21. The Debtor is presently evaluating strategic alternatives for its remaining businesses and assets, including various standalone reorganization and sale options. Following the FDIC-R's takeover of Silicon Valley Bank, the Debtor now derives the vast majority of its remaining revenues from its wholly-owned indirect subsidiary, SVB Securities.

22. In order to maximize the value of SVB Securities, the Debtor has asked SVB Securities' senior management to focus entirely on shepherding SVB Securities through the complex ramifications of the failure of Silicon Valley Bank, the Debtor's chapter 11 proceeding, and facilitating strategic alternatives for SVB Securities.

23. SVB Securities' senior management team has made, and will continue to make, exceptional efforts to maintain operational continuity and preserve the value of its business. Maintaining client relationships, generating new mandates, and attracting and retaining talented professionals can be challenging even in normal conditions. Current circumstances make these critical tasks even more difficult. At this moment, SVB Securities requires the intense focus and relentless efforts of its senior management team to reassure business partners and employees that

5

the commercial bank's failure and SVB Financial's chapter 11 filing will not directly impact or impede the ability of SVB Securities to service its investment banking clients, satisfy obligations to trading counterparties, and honor its compensation arrangements with its employees.

24. Additionally, significant time and energy is being devoted to updating FINRA, SVB Securities' primary securities regulator, on its financial condition and stability; responding to inquiries from its clearing firm and exchanges on which it transacts securities business; reassuring clients and fielding their requests for information and demands to renegotiate engagement terms; and attempting to retain employees at SVB Securities despite offers from competitors and relentless inbound calls from recruiters.

25. At the same time, the Debtor has and will continue to require SVB Securities' management to devote substantial time and effort to the strategic-alternatives process, including by preparing presentations and other documents and data for potential acquirers; responding to extensive due diligence requests; and holding substantive meetings with potential acquirers.

**C. The Arbitrations**

26. On August 17, 2021, UBS filed a Statement of Claim with FINRA Dispute Resolution in New York against SVB Securities (formerly known as SVB Leerink LLC) and fifteen individual respondents who at that time were investment bankers employed by SVB Securities.

27. On February 17, 2022, UBS filed the California Arbitration—a related arbitration proceeding against some of the same individuals. Together, the Arbitrations involve claims against SVB Securities and the fifteen individuals (the "Individual Respondents") related to the same fundamental dispute arising out of the Individual Respondents' resignations from UBS in May 2021, and their hiring by SVB Securities in July and August 2021.

6

28. In the Arbitrations, UBS is seeking substantial compensatory damages for alleged "lost profits" over a four-year period.

29. The Arbitrations have been actively litigated since they began in August 2021 and February 2022. The parties collectively produced a total of approximately 32,000 documents; various third parties produced hundreds of additional documents. The parties have litigated motions to compel brought by both sides, and a motion to compel by UBS seeking to require SVB Securities to produce additional documents is currently pending before the New York Arbitration Panel. Numerous additional third-party subpoenas for documents and trial testimony are outstanding.

30. The deadline to serve pre-trial briefs, witness lists, and exhibit lists is April 25, 2023 in the New York action and May 30, 2023 in the California action. The evidentiary hearings in the New York action are scheduled for May 15-19, 2023; May 22-26, 2023; and July 24-28, 2023. The California action evidentiary hearings are scheduled for June 19-23, 2023.

31. On March 13, 2023, the Debtor announced that it had appointed a restructuring committee of its board of directors to explore strategic alternatives for several of its remaining businesses, including SVB Securities. On March 15, 2023, SVB Securities and the Individual Respondents promptly asked the New York FINRA Arbitration Panel (the "New York Arbitration Panel") to order a 120-day postponement of the New York hearing in light of these extraordinary developments. UBS opposed the postponement request.

32. Two days later, on March 17, 2023, the Debtor filed for chapter 11 bankruptcy protection in this Court. In its press release announcing the chapter 11 filing, the Debtor stated that it "intends to use the court-supervised process to evaluate strategic alternatives for . . . SVB

7

Securities," and is actively marketing SVB Securities for sale and exploring alternatives for a standalone reorganization.

33. On March 27, 2023, the New York Arbitration Panel denied SVB Securities' postponement request without providing any rationale for its decision.[2] In the same order, the New York Panel also reiterated the case schedule for the New York Arbitration beginning with the first trial day on May 15, 2023.

34. Apart from the Individual Respondents, UBS has identified certain senior management members of SVB Securities as key witnesses. For example, UBS has advised SVB Securities in communications to counsel that it will demand testimony from the most senior members of SVB Securities in the early days of the May hearing, including the firm's Chief Executive Officer and Chief Administrative Officer. Other key witnesses in the Arbitrations are likely to include, among others, SVB Securities' Head of Human Resources and its Co-Heads of Investment Banking.

35. Given that UBS has asserted related claims against SVB Securities and fifteen individual bankers formerly employed by SVB Securities, more than twenty-five defense witnesses are expected to testify at each of the Arbitrations.

36. If the Arbitrations are stayed for 120 days, SVB Securities and its senior management will be able to fully dedicate their efforts to stabilizing the company and pursuing a value-maximizing strategic transaction. On the other hand, the continued prosecution and defense of the Arbitrations endangers the Debtor's restructuring effort by diverting the time and resources of SVB Securities' leadership. Given the extraordinary demands of the current business challenges facing SVC Securities following the failure of Silicon Valley Bank and the ongoing strategic-

---

[2] The Individual Respondents in the California Arbitration also sought postponement of that arbitration, but withdrew the request after the New York Arbitration Panel denied SVB Securities' request to postpone the New York Arbitration.

8

alternatives process, proceeding with the Arbitrations at this time threatens to irrevocably destroy the value of SVB Securities, which, in turn, will materially impair the Debtor's efforts to maximize the value of its estate.

**COUNT I**
**(Section 105(a) and 362(a) Injunctive Relief)**

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1-36 of this Complaint as if fully set forth herein.

38. Plaintiff seeks an injunction enjoining the continued prosecution and defense of the Arbitrations under section 105(a) of the Bankruptcy Code for a period of 120 days from the issuance of the injunction.

39. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

40. Section 362(a) operates as an automatic stay, applicable to all entities, of *inter alia* "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Enjoining litigation against non-debtor third parties constitutes an appropriate exercise of a bankruptcy court's section 105(a) and 362(a) powers where the actions "might impede the reorganization process," *In re Bernard L. Madoff Inv. Sec., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013) (quoting *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988)), or when the injunction is "likely to enhance the prospects for a successful resolution of the disputes attending [the debtor's] bankruptcy." *In re Caesars Ent. Operating Co., Inc.*, 808 F.3d 1186, 1188-89 (7th Cir. 2015).

41. To determine whether to enjoin actions against non-debtors under section 105(a), courts look to the requirements of Federal Rule of Civil Procedure 65:

> (1) whether there is a likelihood of successful reorganization, (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction, although a limited exception permits an injunction to issue whether the action to be enjoined is one that threatens the reorganization process if the threat is not imminent, (3) the balance of the comparative harms to the debtor, and to the debtor's reorganization, against that to the would-be-enjoined party should an injunction be issued, and (4) whether the public interest weighs in favor of an injunction,

*In re Purdue Pharms. L.P.*, 619 B.R. 38, 58 (S.D.N.Y. 2020) (internal quotation marks and citations omitted).

42. All four factors weigh heavily in favor of the requested injunction.

43. *First*, the Debtor is reasonably likely to accomplish the primary goal of its chapter 11 case: preserving and maximizing value for all stakeholders. For example, the Debtor is presently evaluating strategic alternatives for its remaining businesses and assets, including various standalone reorganization and sale options.

44. *Second*, there is an imminent irreparable harm to the estate in the absence of an injunction. Allowing the Arbitrations to continue as scheduled would materially jeopardize the Debtor's estate and restructuring prospects.

45. The Debtor is a holding company with no direct operations of its own. And with Silicon Valley Bank in receivership, the importance of SVB Securities to the Debtor has only increased. Thus, the Debtor's financial viability and restructuring prospects rely heavily upon maximizing the value of SVB Securities. SVB Securities and its key personnel must therefore focus entirely on crisis management, shepherding the business through the complex ramifications of the failure of SVB, and the ongoing strategic-alternatives process.

46. Any distraction such as the Arbitrations to the strategic-alternatives process (of which SVB Securities is an integral part) likely will have a material adverse effect on the Debtor's restructuring efforts and diminish the value the Debtor ultimately is able to provide its creditors in its bankruptcy case.

47. *Third*, the balance of harms weighs in favor of an injunction. The certain harm facing the Debtor, its estate, and its restructuring process in the absence of an injunction outweighs the minimal prejudice that UBS would suffer if this Court were to grant the requested relief.

48. The Debtor is not seeking to permanently bypass the arbitration forum or force UBS to litigate its claims through the bankruptcy process. Granting the requested relief means that UBS, at worst, will wait a few months to prosecute its claim for money damages in the Arbitrations.

49. *Fourth*, the public interest is served because staying the Arbitrations for 120 days will improve the Debtor's opportunity for a value-maximizing strategic transaction.

50. Enjoining the Arbitrations for a period of 120 days from issuance of the injunction is therefore appropriate.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor and grant the following relief:

(i) entry of an Order granting an injunction under Bankruptcy Code section 105(a) enjoining and prohibiting UBS from prosecuting the Arbitrations until the effective date of a restructuring plan or further order of this Court;

(ii) granting such other relief as this Court deems just and proper under the circumstances.

(*Signature page follows.*)

Dated: April 6, 2023  
New York, New York

Respectfully submitted,

**JENNER & BLOCK LLP**

By: /s/ *Vincent E. Lazar*

Vincent E. Lazar  
Landon S. Raiford (*pro hac vice* pending)  
353 N. Clark Street  
Chicago, Illinois 60654  
(312) 222-9350  
vlazar@jenner.com  
lraiford@jenner.com

Marc B. Hankin  
Carl N. Wedoff  
1155 Avenue of the Americas  
New York, NY 10036  
(212) 891-1600  
mhankin@jenner.com  
cwedoff@jenner.com

*Proposed Counsel to the Debtor*